1

1           UNITED STATES DISTRICT COURT

2

3          CENTRAL DISTRICT OF CALIFORNIA

4               WESTERN DIVISION

5

6
   UNITED STATES OF AMERICA,      )
7                                 )
                                  )
8                                 )
        PLAINTIFF,                )
9                                 )
        VS.                       ) CASE NO. CR 10-163-TJH
10                                )
   ANTHONY SCLAFANI,              )
11                                ) LOS ANGELES, CALIFORNIA
                                  ) AUGUST 22, 2011
12                                ) (10:15 A.M. TO 10:44 A.M.)
        DEFENDANT.                ) (11:33 A.M. TO 11:36 A.M.)
13   _____)

14

15                      HEARING
           BEFORE THE HONORABLE TERRY J. HATTER, JR.
16              UNITED STATES DISTRICT JUDGE

17

18   APPEARANCES:            SEE NEXT PAGE

19   COURT REPORTER:         RECORDED; COURT SMART

20   COURTROOM DEPUTY:       KELLY DAVIS

21   TRANSCRIBER:            DOROTHY BABYKIN
                             COURTHOUSE SERVICES
22                           1218 VALEBROOK PLACE
                             GLENDORA, CALIFORNIA  91740
23                           (626) 963-0566

24   PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING;
     TRANSCRIPT PRODUCED BY TRANSCRIPTION SERVICE.
25

2

```
 1  APPEARANCES:  (CONTINUED)
    FOR THE PLAINTIFF:          ANDRÉ BIROTTE, JR.
 2                              UNITED STATES ATTORNEY
                                ROBERT DUGDALE
 3                              CHIEF, CRIMINAL DIVISION
                                ASSISTANT UNITED STATES ATTORNEY
 4                              BY:  CHERYL O'CONNOR
                                     STEVEN ARKOW
 5                              ASSISTANT UNITED STATES ATTORNEYS
                                312 NORTH SPRING STREET
 6                              LOS ANGELES, CALIFORNIA  90012

 7
    FOR THE DEFENDANT:          SILVER HADDEN & SILVER
 8                              BY:  MICHAEL DAVID SCHWARTZ
                                     MICHAEL SIMIDJIAN
 9                                   ATTORNEYS AT LAW
                                1428 2ND STREET
10                              SANTA MONICA, CALIFORNIA  90401

11
    FOR CITY OF DESERT HOT      MEYERS NAVE RIBACK
12  SPRINGS POLICE DEPT.:         SILVER & WILSON
                                BY:  LALA KAHRAMANIAN
13                                   ATTORNEY AT LAW
                                333 SOUTH GRAND AVENUE
14                              SUITE 1670
                                LOS ANGELES, CALIFORNIA  90071
15
    ALSO PRESENT:               STEVEN NOVAK, SPECIAL AGENT, FBI
16
                                DANIEL BRESSLER, COMMANDER
17                              CITY OF DESERT HOT SPRINGS

18

19

20

21

22

23

24

25
```

3

1                              I N D E X

2    CASE NO. CR 10-163-TJH                    AUGUST 22, 2011

3    PROCEEDINGS:   HEARING RE:   MOTIONS

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

4

 1   LOS ANGELES, CALIFORNIA; MONDAY, AUGUST 22, 2011; 10:15 A.M.

 2             THE CLERK:  CALLING ITEM NUMBER 2, CRIMINAL CASE

 3   10-163-TJH, UNITED STATES OF AMERICA VERSUS ANTHONY SCLAFANI.

 4             COUNSEL, PLEASE STEP FORWARD AND STATE YOUR

 5   APPEARANCES.

 6             MS. O'CONNOR:  GOOD MORNING, YOUR HONOR.

 7             CHERYL MURPHY AND STEVEN ARKOW FOR THE UNITED

 8   STATES.  ALSO PRESENT AT COUNSEL TABLE IS FBI SPECIAL AGENT

 9   STEVEN NOVAK.

10             THE COURT:  THANK YOU, ALL.

11             MR. SCHWARTZ:  GOOD MORNING, YOUR HONOR.

12             MICHAEL SCHWARTZ AND MICHAEL SIMIDJIAN WITH MR.

13   SCLAFANI, WHO IS ALSO PRESENT AND PRESENT NEXT TO ME.

14             THE COURT:  THANK YOU.

15             MS. KAHRAMANIAN:  GOOD MORNING, YOUR HONOR.

16             LALA KAHRAMANIAN APPEARING ON BEHALF OF DESERT HOT

17   SPRINGS, THE CUSTODIAN OF RECORDS.

18             THE COURT:  YES.

19             WHY DON'T WE TAKE UP THAT MATTER OF THE MOTION TO

20   QUASH THE SUBPOENA FIRST.

21             MS. KAHRAMANIAN:  GOOD MORNING, YOUR HONOR.

22             THE COURT:  GOOD MORNING.

23             COMMANDER BRESSLER:  GOOD MORNING, YOUR HONOR.

24             THE COURT:  GOOD MORNING.

25             IT'S YOUR MOTION.

5

1        MS. KAHRAMANIAN:  YES.  THANK YOU, YOUR HONOR.

2        WELL, YOUR HONOR, AS INDICATED IN OUR MOTION TO

3   QUASH --

4        THE COURT:  EXCUSE ME.

5        WHY DON'T YOU JUST BE SEATED UNTIL SHE FINISHES.

6        COMMANDER BRESSLER:  YES, YOUR HONOR.

7        MS. KAHRAMANIAN:  AS INDICATED IN THE MOTION TO

8   QUASH, THE CUSTODIAN OF RECORDS HAS PRESENTED SUFFICIENT --

9   BOTH FACTUAL AND LEGAL FOUNDATION THAT SUPPORTS -- IS

10  CONCERNED WITH RESPECT TO THE PRIVACY CONCERNS OF THE D.H.S.

11  POLICE OFFICERS.

12        BOTH FEDERAL LAW AND CALIFORNIA LAW RECOGNIZE THAT

13  POLICE OFFICER PERSONNEL RECORDS ARE CONFIDENTIAL AND ARE

14  ENTITLED TO CERTAIN PROTECTIONS.

15        THE COURT DOES HAVE POWER TO EITHER QUASH THE

16  SUBPOENA OR TO LIMIT THE SCOPE OF THE SUBPOENA.

17        AND IN THIS CASE, IT APPEARS THAT THE REQUESTS ARE

18  OVERBROAD.  THEY DO INVOLVE THE D.H.S. POLICE OFFICERS WHO

19  ARE NOT PARTIES IN THIS INSTANT CASE.

20        AND IT IS -- IT IS DIFFICULT FOR THE CUSTODIAN OF

21  RECORDS TO DETERMINE EXACTLY WHAT INFORMATION IS REQUESTED.

22  THE PERSONNEL RECORDS COULD PRESUMABLY CONTAIN A LOT OF

23  CONFIDENTIAL INFORMATION THAT COULD FALL INTO THE HANDS OF

24  THE DEFENDANT.

25        AND IF THE COURT IS INCLINED TO GO AHEAD AND TO

6

1   GRANT THE SUBPOENA OR TO ALLOW THE RECORDS TO BE PRODUCED, WE

2   ASK THAT THE PROTECTIVE ORDER THAT WE HAVE FILED CONCURRENTLY

3   BE SIGNED IN THIS CASE.

4           THE COURT:  WELL, LET ME JUST ASK YOU, NUMBER 1 IS

5   A REQUEST TO COPY THE INTERNAL AFFAIRS INVESTIGATION

6   INTERVIEW TAPES INVOLVING THE JAMAL WHITE CASE AND THE

7   ANGELICA VARGAS CASE.

8           WHY AREN'T THEY PERTINENT, THE MATERIAL?

9           MS. KAHRAMANIAN:  WELL, YOUR HONOR, THE REASON WHY

10  IS BECAUSE I HAVE NOT PERSONALLY REVIEWED THIS INFORMATION.

11  BUT IT COULD POTENTIALLY INVOLVE OR MENTION OTHER D.H.S.

12  POLICE OFFICERS WHO ARE NOT PARTIES IN THIS CASE.  AND THAT

13  IS A CONCERN.

14          THE CONCERN IS THAT WE DON'T KNOW WHAT OTHER

15  OFFICERS ARE NAMED, IF THEY'VE MADE STATEMENTS OR WHATNOT;

16  IF IT CONTAINS CONFIDENTIAL INFORMATION WITH RESPECT TO THEM,

17  PHONE NUMBERS, ADDRESSES, THAT KIND OF INFORMATION.  THOSE

18  ARE THE CONCERNS THAT WE PRESENT TO THE COURT.

19          THE COURT:  HAS ANY OF THIS INFORMATION BEEN TURNED

20  OVER TO THE GOVERNMENT AS FAR AS YOU KNOW?

21          MS. KAHRAMANIAN:  I BELIEVE THAT SOME OF THE

22  INFORMATION HAS BEEN TURNED OVER PURSUANT TO A SUBPOENA THAT

23  WAS ISSUED EARLIER IN THE CASE.  AND I THINK A PROTECTIVE

24  ORDER WAS SIGNED BY THE COURT.  SO I THINK THAT SOME

25  INFORMATION WAS ALREADY PROVIDED TO THE --

7

1                  THE COURT:  ALL RIGHT.

2                  MS. KAHRAMANIAN:  -- U.S. ATTORNEY'S OFFICE.

3                  THE COURT:  ALL RIGHT.

4                  IT WOULD APPEAR TO ME THAT YOU SHOULD PROVIDE THE

5      MATERIALS TO THE COURT FOR AN IN-CAMERA REVIEW.

6                  I WOULD CERTAINLY THINK THAT THIS NUMBER 1 HERE

7      WOULD COME IN, AND, OF COURSE, THERE WOULD BE A PROTECTIVE

8      ORDER WITH ANYTHING THAT I WOULDN'T ALLOW IN.

9                  THIS NUMBER 4, I DON'T QUITE UNDERSTAND THE NEED

10     FOR.

11                 AND NUMBER 5, IT SEEMS TO ME IT OUGHT TO COME IN.

12                 NUMBER 6 -- AND ALL THIS IS SUBJECT TO MY REVIEWING

13     IT IN-CAMERA THOUGH.  BUT JUST PRELIMINARILY NUMBER 6 SEEMS

14     TO ME WOULD COME IN AS WELL.

15                 I DON'T UNDERSTAND NUMBER 7.

16                 I DON'T UNDERSTAND NUMBER 8.

17                 NUMBER 9, I PROBABLY WOULD NOT LET IN -- 10, 11,

18     12.

19                 SO, PERHAPS THE EASIEST THING TO DO IS JUST TO

20     PROVIDE IT TO THE COURT.

21                 BUT LET ME HEAR FROM THE DEFENSE COUNSEL IN THIS

22     MATTER.

23                 PLEASE REPEAT YOUR REPRESENTATION WHEN YOU SPEAK,

24     PLEASE.

25                 MR. SIMIDJIAN:  GOOD MORNING, YOUR HONOR.

8

1          MICHAEL SIMIDJIAN ON BEHALF OF DEFENDANT ANTHONY

2    SCLAFANI.

3          THE COURT:  YES.

4          MR. SIMIDJIAN:  I THINK AS BOTH THE CITY'S MOTION

5    TO QUASH AND OUR MOTION TO COMPEL HAVE REVEALED THE PARTIES

6    HAVE BEEN WORKING TOWARD SOME SORT OF MUTUALLY AGREEABLE

7    DECISION HERE THAT WILL ALLOW MR. --

8          THE COURT:  IT SOUNDS LIKE YOU WEREN'T ABLE TO

9    REACH SUCH A DECISION?

10          MR. SIMIDJIAN:  NO, YOUR HONOR.  WE WERE NOT.  WE

11    STILL HAD DISPUTES WITH RESPECT TO THE PERSONNEL FILES THAT

12    WE REQUESTED.

13          THE CITY STATED A CONCERN, YOUR HONOR, ABOUT THE

14    NAMES OF PARTICULAR LAW ENFORCEMENT PERSONNEL THAT MIGHT BE

15    REFERENCED WITHIN SOME OF THESE DOCUMENTS.  CALIFORNIA LAW

16    DOES PROTECT -- DOES HAVE --

17          THE COURT:  YES.

18          MR. SIMIDJIAN:  -- A LIMITED PROTECTION FOR THE

19    PERSONNEL FILES OF LAW ENFORCEMENT OFFICERS.

20          HOWEVER, CALIFORNIA LAW IS ALSO VERY CLEAR THAT

21    MERELY THE NAME OF A POLICE OFFICER IS NOT ITSELF PROTECTED

22    AND CONFIDENTIAL.  IT HAS TO BE IN CONNECTION WITH A

23    DISCLOSURE OF SOME ITEM THAT IS LOCATED WITHIN THAT LAW

24    ENFORCEMENT OFFICIAL'S PERSONNEL FILE.

25          SO, WITH MANY OF THESE REQUESTS, YOUR HONOR, THE

1   CONCERN THAT, WELL, THERE MAY BE AN OFFICER WHO'S MENTIONED

2   SOMEWHERE IN THE MIDDLE OF THE REPORT OR ANOTHER OFFICER HIS

3   NAME IS MENTIONED BECAUSE HE SPOKE TO A WITNESS POTENTIALLY.

4   THAT IN AND OF ITSELF DOES NOT RENDER THE MATERIAL

5   CONFIDENTIAL.  AND, SO, WE TRIED TO TAILOR THE SUBPOENA AS

6   NARROWLY AS POSSIBLE TO ONLY THOSE PEOPLE AND THOSE INCIDENTS

7   THAT ARE RELEVANT TO THIS CASE.

8           IN PARTICULAR, DEALING WITH -- A LOT OF THIS

9   INFORMATION, YOUR HONOR, DEALS WITH SEEKING IMPEACHMENT

10  EVIDENCE AGAINST PARTICULAR WITNESSES AGAINST -- AGAINST MR.

11  SCLAFANI.

12          IF THE COURT HAS ANY PARTICULAR CONCERNS, I'VE

13  HEARD YOU VOICE AN OPINION ABOUT SOME OF THESE MATTERS --

14          THE COURT:  RIGHT.

15          MR. SIMIDJIAN:  -- IN THE SUBPOENA, I'D BE GLAD TO

16  ADDRESS THEM INDIVIDUALLY IF THE COURT CARES FOR SOME SORT OF

17  EXPLANATION BEYOND WHAT I PLACED IN THE MOTION TO COMPEL.

18          THE COURT:  WELL, AS I'VE INDICATED PRELIMINARILY,

19  AND I'LL JUST MAKE THAT FINAL, I'M GOING TO RECEIVE THE

20  DOCUMENTS IN-CAMERA, AND I'LL REVIEW THEM.  AND, THEN, YOU'LL

21  HAVE AN OPPORTUNITY TO ADDRESS INDIVIDUALLY ANY CONCERNS THAT

22  I RAISE WITH YOU PUBLICLY HERE.

23          MR. SIMIDJIAN:  AND CERTAINLY, YOUR HONOR, I DO

24  APPRECIATE YOU TAKING THE TIME TO DO THAT.  WE HAVE NO

25  OBJECTION TO A PROTECTIVE ORDER BEING ISSUED IN THIS CASE.

1  WE ALREADY HAVE A PROTECTIVE ORDER IN PLACE WITH THE

2  PERSONNEL FILES THAT THE U.S. ATTORNEY'S OFFICE DISCLOSED TO

3  US.  WE SEE NO REASON FOR THE COURT TO TAKE AN INCONSISTENT

4  POSITION WITH REGARD TO THOSE PERSONNEL FILES.

5           BUT GIVEN THE FACT THAT WE DO HAVE PERSONNEL FILES

6  THAT WE'VE RECEIVED FROM THE U.S. ATTORNEY'S OFFICE AND ALSO

7  MATERIAL THAT WE -- PERSONNEL FILES THAT WE'VE RECEIVED FROM

8  THE CITY OF DESERT HOT SPRINGS TO THIS POINT, WE JUST ASK

9  THAT THE MATERIAL NOT NECESSARILY BE WITHHELD FROM US BECAUSE

10 THEY DO CONTAIN SOME CALIFORNIA LAW ENFORCEMENT CONFIDENTIAL

11 PERSONNEL FILES.

12           THE COURT:  ALL RIGHT.  THANK YOU.

13           MR. SIMIDJIAN:  THANK YOU, YOUR HONOR.

14           THE COURT:  ALL RIGHT.  THAT WILL BE THE ORDER.

15           YOU'LL SUBMIT THE REQUESTED DOCUMENTS TO THE COURT

16 FOR AN IN-CAMERA REVIEW.

17           MS. KAHRAMANIAN:  THANK YOU, YOUR HONOR.

18           THE COURT:  ALL RIGHT.

19           AND THERE WILL BE A PROTECTIVE ORDER ACCOMPANYING

20 ANY OF THE ITEMS THAT THE COURT DECIDES SHOULD COME IN.

21           MS. KAHRAMANIAN:  THANK YOU, YOUR HONOR.

22           WOULD THE COURT BE SIGNING THE PROPOSED PROTECTIVE

23 ORDER THAT WAS FILED WITH THE MOTION TO QUASH?

24           THE COURT:  YES.

25           MS. KAHRAMANIAN:  CONSIDER --

1            THE COURT:  THAT'S RIGHT.

2            MS. KAHRAMANIAN:  THANK YOU VERY MUCH, YOUR HONOR.

3            THE COURT:  ALL RIGHT.  THANK YOU.

4            MS. O'CONNOR:  YOUR HONOR, MAY THE GOVERNMENT RAISE

5    ONE OR TWO POINTS WITH RESPECT TO THE DOCUMENTS AND THE

6    MOTION TO COMPEL.

7            THE COURT:  ALL RIGHT.

8            THEN, SIR, WHILE YOU'RE STILL HERE COULD COUNSEL --

9            MS. O'CONNOR:  THANK YOU, YOUR HONOR.

10           FIRST OF ALL, THE COURT HAD ASKED --

11           THE COURT:  WOULD YOU COME TO THE LECTERN, PLEASE.

12           MS. O'CONNOR:  YES.

13           YOUR HONOR HAD ASKED WITH REQUEST TO CATEGORY

14    NUMBER 1, A COPY OF THE INTERNAL AFFAIRS INVESTIGATION

15    INTERVIEW TAPES WITH RESPECT TO THE WHITE AND VARGAS CASE.

16           THE COURT:  YES.

17           MS. O'CONNOR:  WHETHER THESE MATERIALS WERE TURNED

18    OVER TO THE GOVERNMENT OR NOT.

19           THE COURT:  YES.

20           MS. O'CONNOR:  AND THAT IS ONE OF THE ISSUES IN THE

21    DEFENDANT'S MOTION FOR SPOILATION SANCTIONS.

22           THE GOVERNMENT HAS SUBPOENAED THESE TAPES AND HAD

23    REQUESTED THEM A NUMBER OF TIMES.  IT'S OUR UNDERSTANDING

24    THAT THE TAPES DON'T EXIST ANYMORE.  AND WE'LL ADDRESS THAT

25    MOTION WHEN THE COURT ASKS US TO.

 1           BUT WITH RESPECT TO MANY OF THE CATEGORIES OF

 2  DOCUMENTS THAT THE DEFENDANT AND THE CITY ARE FIGHTING OVER,

 3  THE GOVERNMENT HAS A CONCERN OF THE IMPACT THIS IS GOING TO

 4  HAVE ON THE TRIAL DATE.  AND THE GOVERNMENT HAS A CONCERN

 5  ABOUT WHETHER ANY OF THESE DOCUMENTS EITHER EXIST, AND TO THE

 6  EXTENT THAT THEY DO EXIST, WHETHER WE'VE ALREADY TURNED THEM

 7  OVER TO THE DEFENSE.

 8           WE'VE TURNED OVER LARGE -- A LARGE VOLUME OF

 9  IMPEACHMENT EVIDENCE AND IMPEACHMENT INFORMATION THAT WE'VE

10  OBTAINED FROM THE OFFICERS' PERSONNEL FILES.

11           SO, TO THE EXTENT THAT WE CAN SOMEHOW SAVE THE

12  COURT THE TIME AND BURDEN OF REVIEWING MATERIALS IN-CAMERA

13  WHEN WE COULD GET A REPRESENTATION PERHAPS FROM THE CITY AS

14  TO WHETHER THEY DO OR DON'T EXIST, AND WE COULD WORK WITH THE

15  CITY TO IDENTIFY WHETHER THEY'RE MATERIALS THAT WE'VE ALREADY

16  DISCLOSED IN DISCOVERY, THAT WOULD SEEM TO STREAMLINE THINGS

17  --

18           THE COURT:  YES.  THAT WOULD BE --

19           MS. O'CONNOR:  -- A BIT.

20           THE COURT:  -- REALLY HELPFUL.

21           WE HAVE A TRIAL DATE OF SEPTEMBER 13TH; IS THAT

22  RIGHT?

23           MS. O'CONNOR:  THAT'S CORRECT, YOUR HONOR.

24           THE COURT:  ALL RIGHT.  WOULD IT BE ANY IMPOSITION

25  IF WE WERE TO MOVE THAT TO THE 20TH?

1                MS. O'CONNOR:  MAY I JUST CONFER WITH MR. ARKOW FOR

2    A MINUTE, YOUR HONOR?

3                THE COURT:  CERTAINLY.  CERTAINLY.

4                (MS. O'CONNOR CONFERRING WITH MR. ARKOW.)

5                MS. O'CONNOR:  YOUR HONOR --

6                THE COURT:  YES.

7                MS. O'CONNOR:  -- IN GENERAL, THE GOVERNMENT HAS NO

8    OBJECTION TO THAT.  THERE IS ONE WITNESS WHO HAS SOME

9    COMPLICATED SCHEDULING MATTERS.  SO, WE WERE TRYING TO FIGURE

10   OUT WHETHER THAT WITNESS IS AVAILABLE THE WEEK OF THE 20TH OR

11   NOT.

12               THE COURT:  YES.

13               MS. O'CONNOR:  AND, UNFORTUNATELY, WE DON'T -- I

14   CAN'T CONFIRM THAT.  BUT WE WOULDN'T OBJECT TO CONTINUING

15   IT.  AND PERHAPS IF THAT WITNESS IS NOT AVAILABLE THAT WEEK,

16   WE COULD DISCUSS WITH COUNSEL THAT MATTER.

17               THE COURT:  ALL RIGHT.

18               ALL RIGHT.  AND ON THE DEFENSE.

19               MR. SCHWARTZ:  GOOD MORNING, YOUR HONOR.

20               THE COURT:  GOOD MORNING.

21               MR. SCHWARTZ:  MICHAEL SCHWARTZ AGAIN --

22               THE COURT:  YES.

23               MR. SCHWARTZ:  -- ON BEHALF OF MR. SCLAFANI.

24               SPECIFICALLY, JUST REGARDING MOVING IT TO THE 20TH,

25   YOUR HONOR, THAT I CANNOT DO.  I'VE GOT THE JEWISH HOLIDAYS

14

1     STARTING --

2              THE COURT:  OH.

3              MR. SCHWARTZ:  -- ON THE EVENING OF THE 28TH.  I

4     DON'T THINK WE'LL BE DONE IN TIME IF WE START ON THE 20TH.

5     IT WOULD BE CUTTING IT VERY CLOSE.

6              I ALSO HAVE A HEARING, WHICH WAS PUT OVER TO THAT

7     FOLLOWING WEEK, WHEN WE DECIDED TO START THIS ON THE 13TH.

8     AND THAT'S BEEN MOVED TWICE ALREADY.  I CAN -- I DON'T THINK

9     WE CAN MOVE THAT A THIRD TIME ON THAT PARTICULAR CLIENT.

10             SO, WITH REGARDS TO SOME OF THE CONCERNS THAT THE

11    GOVERNMENT JUST RAISED AS FAR AS IF THERE WERE -- IF THERE'S

12    REDUNDANCY BETWEEN WHAT WE'VE ALREADY GOTTEN FROM THE

13    GOVERNMENT PURSUANT TO THE DISCOVERY COMPLIANCE AND THIS

14    PARTICULAR MOTION TO COMPEL, WE DON'T KNOW.

15             WE DON'T KNOW IF WE'VE GOTTEN ENTIRE PERSONNEL

16    FILES OR PARTS OF THEM THAT THE GOVERNMENT FELT WERE RELEVANT

17    TOWARDS IMPEACHMENT.  AND TO BE QUITE FRANK, WHAT THE

18    GOVERNMENT MAY FEEL IS RELEVANT TOWARDS IMPEACHMENT, WE MAY

19    NOT.  WE'D MUCH PREFER THE COURT LOOK AT THIS THING IN CAMERA

20    AND DECIDE IF IT'S RELEVANT OR NOT -- IF IT'S ADMISSIBLE OR

21    NOT.

22             THE COURT:  WELL, I THINK THE BOTTOM LINE, MR.

23    SCHWARTZ, IS WHETHER INDEED THE ITEMS THAT YOU'RE TALKING

24    ABOUT EVEN EXIST.  SO, WE NEED TO MAKE THAT DETERMINATION.

25             MR. SCHWARTZ:  OUTSIDE OF NUMBER 1, YOUR HONOR,

1    THAT'S TRUE.  AND NUMBER 1 IT MAY BE A MATTER OF IT NOT

2    EXISTING OR NOT.  WE DID NOT GET THAT RESPONSE ORIGINALLY

3    FROM DESERT HOT SPRINGS WITH REGARDS TO THIS SUBPOENA.

4              AS FAR AS IT COMING CLOSE TO THE TRIAL DATE, THE

5    SUBPOENA WAS ISSUED I BELIEVE EITHER THE END OF MAY BEGINNING

6    OF JUNE, WHICH WOULD HAVE BEEN PLENTY OF TIME.

7              WE HAVE SUBPOENAED OTHER MATERIALS FROM THE CITY

8    PRIOR TO THIS, INCLUDING MATERIALS THAT MAY HAVE FORMED THE

9    SAME CONCERNS THAT THE CITY EXPRESSED TODAY.  WE'VE HAD NO

10   PROBLEMS GETTING THOSE ITEMS FROM THE CITY BEFORE.  THIS WAS

11   SOMEWHAT OF A SURPRISE TO US.  AND THE INITIAL RESPONSE FROM

12   THE CITY WAS BASICALLY NOT TO RESPOND AT ALL FOR A WEEK OR

13   TWO.

14             AND THEN MR. SIMIDJIAN FROM MY OFFICE AND THE

15   CITY'S ATTORNEY EXCHANGED PHONE CALLS AND LETTERS, AND THAT'S

16   WHY IT'S DRAGGED TO THIS POINT.  IT WASN'T BECAUSE IT WAS A

17   LAST-MINUTE SUBPOENA.

18             SO, I UNDERSTAND THE LOGISTICAL PROBLEMS.  AND TO

19   BE QUITE HONEST, THE GOVERNMENT HAS BEEN VERY ACCOMMODATING

20   TO OUR LOGISTICAL PROBLEMS IN THE PAST AND I APPRECIATE THAT.

21   AND WE HAVE TRIED TO WORK TOGETHER.

22             BUT WE DON'T KNOW WITHIN THESE MATERIALS, ASIDE

23   FROM ITEM NUMBER 1, WHICH MAY NOT EXIST, IF THERE IS

24   DUPLICATION OR NOT, THINGS RELEVANT OR NOT.  WE DO KNOW THERE

25   ARE MATERIALS IN HERE THAT THE CITY DOES NOT WANT TO TURN

1    OVER, AND THE GOVERNMENT MAY ARGUE ARE NOT RELEVANT, BUT THEY

2    ARE FOR OUR IMPEACHMENT OF SPECIFIC WITNESSES -- AND ONE OR

3    TWO BEING MAIN WITNESSES IN THE GOVERNMENT'S CASE, SO.

4             THE COURT:  ALL RIGHT.  WELL, THAT'S FINE.

5             BUT YOU INDICATE SOME PROBLEM BECAUSE OF THE JEWISH

6    HOLIDAYS.  BUT IF WE START ON THE 13TH, WE WON'T BE ABLE TO

7    GO ON THE 14TH, AND WE VERY WELL MIGHT GO OVER INTO THE

8    JEWISH HOLIDAYS.

9             SO, HOW IS THAT GOING TO AFFECT YOU?

10            MR. SCHWARTZ:  WELL, THE HOLIDAY, AGAIN, YOUR

11   HONOR, STARTS --

12            THE COURT:  WELL, JUST A MINUTE.  YOU MIGHT AS WELL

13   GET USED TO IT.  WE ONLY TALK FROM THE LECTERN.

14            MR. SCHWARTZ:  I APOLOGIZE, YOUR HONOR.

15            THE COURT:  ALL RIGHT.

16            MR. SCHWARTZ:  THE HOLIDAY STARTS ON THE EVENING OF

17   THE 28TH.  AND WHEN I SPOKE WITH COUNSEL ABOUT THE 13TH

18   ORIGINALLY, I DID EXPRESS SOME CONCERN.  AND MR. ARKOW

19   ASSURED ME BASED ON HIS EXPERIENCE IN THE FEDERAL COURT IT

20   WOULD NOT GO TOWARDS THE 28TH.  HE EXPECTED IT NOT TO LAST

21   EVEN MORE THAN A WEEK AND A HALF.

22            MYSELF, I DON'T EXPECT TO BE VERBOSE ON MY

23   CROSS-EXAMINATIONS AND MY ARGUMENT.  I'M NOT USUALLY.  MAYBE

24   MY ARGUMENT TO THE COURT, BUT NOT WHEN IT COMES ACROSS

25   EXAMINING WITNESSES.

1              IT WOULD BE -- IT WOULD PRESENT A PROBLEM FOR ME,

2     YOUR HONOR.  IT WOULD.  I THINK THE COURT HAS NOTICED I'M AN

3     ORTHODOX JEW.

4              THE COURT:  YES.

5              MR. SCHWARTZ:  I DON'T HAVE THE ABILITY TO KIND OF

6     --

7              THE COURT:  NO, I UNDERSTAND.

8              MR. SCHWARTZ:  -- BE FLEXIBLE WITH THOSE THINGS.

9              THE COURT:  NO.  I THINK WE'LL BE ALL RIGHT WITH

10    THE 13TH, EVEN IF WE DON'T HAVE THE 14TH AVAILABLE, SO THAT

11    YOU'RE CLEAR BY THE TIME OF THE HOLIDAY.

12             ALL RIGHT.  THANK YOU.

13             MR. SCHWARTZ:  THANK YOU, YOUR HONOR.

14             THE COURT:  ALL RIGHT.

15             WHY DON'T WE NOW TAKE UP THESE OTHER MOTIONS IN

16    LIMINE, THE GOVERNMENT'S MOTION IN LIMINE FOR AN ORDER

17    LIMITING OPINION TESTIMONY, ABUSE-OF-FORCE EXPERT.

18             I'VE READ THE PAPERS AND ALL.  SO, IF YOU STILL

19    WISH TO BE HEARD, YOU MAY BE HEARD BRIEFLY.

20             MR. ARKOW:  YOUR HONOR, IT IS THE GOVERNMENT'S

21    MOTION.  THE GOVERNMENT ISN'T --

22             THE COURT:  YES.

23             MR. ARKOW:  OH, I DON'T HAVE ANYTHING ADDITIONAL.

24             THE COURT:  NO.  AND YOU ARE?

25             MR. ARKOW:  STEVEN ARKOW FOR THE UNITED STATES.

1            THE COURT:  THANK YOU.

2            MR. ARKOW:  IT'S THE GOVERNMENT'S MOTION BRINGING

3    TO THE COURT'S ATTENTION THE PARAMETERS UNDER RULE 702 AND

4    703 AND 704 ABOUT WHAT OPINION EVIDENCE IS ADMISSIBLE.  GIVEN

5    THE EXPERT'S FIRST REPORT AND THEN THE REVAMPED REPORT, THE

6    GOVERNMENT HAS SOME CONCERNS.

7            THE GOVERNMENT IS NOT SAYING AS A BLANKET RULE

8    EXPERT USE-OF-FORCE TESTIMONY IS IMPERMISSIBLE.  IT'S MAKING

9    THE DEFENSE AWARE.  AND THE GOVERNMENT WILL OBJECT TO ANY

10   TESTIMONY THAT IS BEYOND THE SCOPE OF WHAT THE RULES AND THE

11   CASES ALLOW.  THE GOVERNMENT IN ITS REPLY POINTED OUT THE

12   DEFICIENCIES IN THE LATEST REPORT.

13           AND UNLESS THE COURT HAS SPECIFIC QUESTIONS THAT

14   ARISE FROM THIS HEARING, I DON'T HAVE ANYTHING FURTHER.

15           THE COURT:  ALL RIGHT.  THANK YOU.

16           MR. SCHWARTZ?

17           MR. SCHWARTZ:  YES, YOUR HONOR.  AGAIN, I

18   APOLOGIZE.  THERE MAY HAVE BEEN A SNAFU.

19           I SPOKE WITH MR. SIMIDJIAN A MOMENT AGO.  WE DID

20   NOT RECEIVE A REPLY TO THAT PARTICULAR MOTION ABOUT THE

21   EXPERT.  WE DID RECEIVE THE ORIGINAL MOTION BY THE GOVERNMENT

22   BASED ON THE EXPERT'S FIRST REPORT.  WE REPLIED TO THAT

23   MOTION WITH A NEW EXPERT REPORT.  WE DID NOT RECEIVE THE

24   WRITTEN REPLY TO OUR RESPONSE.  SO --

25           THE COURT:  WELL, I DID RECEIVE THE REPLY AND I'VE

1    READ IT.  SO, YOU'RE SOMEWHAT AT A DISADVANTAGE I SUPPOSE.

2    BUT JUST REST ASSURED THAT THE GOVERNMENT'S GOING TO OBJECT

3    IF YOU GO BEYOND THE NORMAL PARAMETERS OF 702.

4             MR. SCHWARTZ:  THAT IS FAIR GAME, YOUR HONOR.  I

5    UNDERSTAND.

6             THE COURT:  AND I'D EXPECT THAT.

7             MR. SCHWARTZ:  I DO.

8             THE COURT:  AND LET ME JUST MAKE IT VERY CLEAR

9    THAT, AS I LOOK AT IT FROM WHAT YOU HAVE SUGGESTED HERE, THAT

10   YOUR EXPERT IS GOING TO BE PRETTY TIGHTLY CONFINED TO HIS

11   OPINION WITH REGARD TO THE POLICIES OF THE SUBJECT DEPARTMENT

12   AND WHETHER OR NOT THIS DEFENDANT WAS IN COMPLIANCE.

13            MR. SCHWARTZ:  THAT'S FINE, YOUR HONOR.  THAT'S

14   WHAT I EXPECTED, TO BE QUITE FRANK.  I TOLD MY EXPERT AFTER

15   THE FIRST RESPONSE AND, TO BE QUITE FRANK, AFTER THE FIRST

16   REPORT THAT HE NEEDED SOMETHING MUCH MORE DETAILED AND

17   THOROUGH.  I THINK HE MAY HAVE GONE A BIT IN TOO MUCH DETAIL

18   IN THE REPORT.  BUT I DO --

19            THE COURT:  OKAY.

20            MR. SCHWARTZ:  -- NOT EXPECT THAT REPORT TO BE THE

21   TESTIMONY.  IT WILL BE CONFINED WITHIN THE RULES.  AND I

22   WOULD EXPECT OBVIOUSLY FROM OPPOSING COUNSEL AN OBJECTION IF

23   IT WAS NOT.

24            THE COURT:  ALL RIGHT.  LET'S SEE -- YOU MIGHT AS

25   WELL REMAIN THERE.

1  DEFENDANT'S MOTION TO EXCLUDE WITNESSES' TESTIMONY

2  FOR FAILURE TO DISCLOSE BRADY/GIGLIO MATERIAL AND SPOILATION

3  SANCTIONS.

4  GO AHEAD.

5  GO AHEAD, MR. SCHWARTZ.

6  MR. SCHWARTZ:  YOUR HONOR, WE WOULD JUST SUBMIT ON

7  THE PAPERWORK.  I HAVE NOTHING REALLY NEW TO ADD.  THERE ARE

8  SOME NUANCES TO AN ARGUMENT TO MAKE.  I THINK, HOWEVER, THAT

9  THE LAW IS SOMEWHAT CLEAR.  WE DID BASE OUR ARGUMENT ON

10 HIGGINBOTHAM, TO BE QUITE FRANK, THAT THE COURT HAS THE

11 ABILITY AND THE POWER TO RECTIFY ANY PREJUDICE THERE MAY HAVE

12 BEEN.  IN THIS PARTICULAR CASE, JUST THE TIME IT TOOK FOR

13 THIS TO GET TO AN INDICTMENT STAGE, THE DIFFERENT WITNESSES,

14 SPECIFICALLY SOME OF THE ONES FROM DESERT HOT SPRINGS, BUT

15 EVEN SOME OF THE OTHER ONES WERE INTERVIEWED MULTIPLE TIMES

16 BY THE FBI.

17 THIS WASN'T A CASE WHERE THEY WERE SEARCHING FOR A

18 WITNESS FOR THREE OR FOUR OR FIVE YEARS.  IT WASN'T A CASE

19 WHERE THEY HAD NO WITNESS AT THEIR DISPOSAL OR COULDN'T DO AN

20 INVESTIGATION.  IT SEEMED ALMOST AS IF THEY WERE GOING BACK

21 AND FORTH FOR SEVERAL YEARS.

22 AND IN THE INTERIM PERIOD THOSE TAPES WERE

23 DESTROYED.  IN THE INTERIM PERIOD, PEOPLE LOST A DEGREE OF

24 THEIR MEMORIES ABOUT CERTAIN EVENTS, AND THAT WILL PREJUDICE

25 MY CLIENT.  SPECIFICALLY THE TAPES, WHICH I UNDERSTAND

1   REGARDING THE DISTINGUISHMENT BETWEEN THE FEDERAL

2   PROSECUTOR'S OFFICE AND DESERT HOT SPRINGS, BUT THERE ARE

3   NUANCES ON A TAPED STATEMENT.

4           I EXPECT MS. HEATH WHEN SHE TESTIFIES, IF SHE'S

5   CROSS-EXAMINED OR EVEN POSSIBLY ON DIRECT, TO STATE THAT THE

6   REASON HER INTERNAL AFFAIRS STATEMENT WAS DIFFERENT THAN WHAT

7   SHE'S TESTIFYING TO NOW IS INTERNAL AFFAIRS -- SHE WAS

8   EXPECTING SOME KIND OF RETALIATION.  SHE WAS AFRAID OF

9   RETALIATION.  THINGS OF THAT NATURE.

10          WHAT WE HAVE IS A SUMMARY FROM INTERNAL AFFAIRS.

11  IF WE HAD A VERBATIM -- IF WE HAD A TAPE, FOR ALL I KNOW IT

12  HAPPENS MANY TIMES IN INTERNAL AFFAIRS WHERE AN INVESTIGATOR

13  TRIES TO MAKE THE PERSON FEEL AT EASE.  AND THERE COULD HAVE

14  BEEN SOME LAUGHTER.  THERE COULD HAVE BEEN SOME FRIVOLITY.

15  THERE COULD HAVE AT LEAST BEEN SOME EASEMENT OF WORDS.  THAT

16  MAY SPEAK VOLUMES AND CONTRADICT A STATEMENT ON THE STAND

17  THAT SHE WAS AFRAID OF RETALIATION.

18          THERE ARE OTHER SURROUNDING FACTORS IN THAT TIME

19  FRAME THAT ALSO SPEAK AGAINST A FACADE OF FEAR OF

20  RETALIATION.  BUT HAVING TO LISTEN TO HER ACTUAL WORDS WOULD

21  BE THE BEST INDICATOR.  AND WE DON'T HAVE THAT.

22          WE ALSO DON'T HAVE A VERBATIM WHICH ALSO WOULD TELL

23  US THE SPECIFICS OF THE QUESTIONS AND THE SPECIFICS OF THE

24  ANSWERS.

25          AND WHAT AN INVESTIGATOR FROM INTERNAL AFFAIRS

1  INVESTIGATING POSSIBLE MISCONDUCT ON BEHALF OF MY CLIENT MAY

2  THINK IS RELEVANT TO PUT INTO A SUMMARY MAY BE VERY DIFFERENT

3  THAN WHAT WE THINK IS RELEVANT FOR PURPOSES OF A PROCEEDING

4  OF THIS NATURE -- A CRIMINAL TRIAL WHERE HE'S A DEFENDANT,

5  AND WE'RE CROSS-EXAMINING ONE OF THE MAIN WITNESSES AGAINST

6  HIM.  WE DON'T HAVE ANY OF THAT.

7        AND THE INVESTIGATION TO MY KNOWLEDGE BY THE

8  FEDERAL GOVERNMENT STARTED WITHIN ABOUT A YEAR OR SO, GIVE OR

9  TAKE A MONTH OR TWO, OF THE ACTUAL INTERNAL AFFAIRS

10  INVESTIGATION.  AND WE'VE HAD NO INDICATION FROM THE CITY OR

11  FROM THE FEDERAL GOVERNMENT THAT THERE WAS AN INQUIRY ABOUT

12  THE EXISTENCE OF THE TAPES AT THAT POINT.  THERE WAS NO I

13  GUESS EFFORT ON THE PART OF EITHER THE FEDERAL GOVERNMENT OR

14  DESERT HOT SPRINGS TO PRESERVE THOSE TAPES.  BUT THEY ALL

15  KNEW THERE WAS AN INVESTIGATION GOING ON.

16        MS. HEATH WAS INTERVIEWED MAYBE --

17        THE COURT:  SO, IS IT YOUR VIEW THAT BECAUSE THE

18  INVESTIGATION WAS GOING ON, THAT, THEREFORE, THE FEDERAL

19  GOVERNMENT THEN CONTROLLED THOSE TAPES AND ANY OF THE OTHER

20  ITEMS HERE?

21        MR. SCHWARTZ:  NO, YOUR HONOR.  I KNOW THE LAW --

22  THE LAW IS CLEAR ON THAT.  IT JUST --

23        THE COURT:  WELL, THEN, IF THEY EXIST, THEN WHAT'S

24  THE PROBLEM?

25        MR. SCHWARTZ:  IF THEY EXIST --

1              THE COURT:  IF THEY DON'T EXIST, THEY DON'T EXIST.

2              MR. SCHWARTZ:  I UNDERSTAND, YOUR HONOR.  I GUESS

3    THE ARGUMENT THAT WE WERE TRYING TO MAKE THROUGH REALLY THE

4    CASE, THE HIGGINBOTHAM CASE, IS THAT THERE IS PREJUDICE.  AND

5    --

6              THE COURT:  YES, BUT IT CAN'T BE SUBSCRIBED TO THE

7    GOVERNMENT, CAN IT?

8              MR. SCHWARTZ:  I WOULD THINK UNDER THE CURRENT

9    STATE OF THE LAW, NO, YOUR HONOR, AS AN OFFICER OF THE COURT.

10             THE COURT:  ALL RIGHT.  SO, THEN, THAT IS DENIED.

11             MR. SCHWARTZ:  THANK YOU, YOUR HONOR.

12             THE COURT:  ALL RIGHT.  LET'S GET YOUR NEXT MOTION

13   HERE.

14             DEFENDANT'S MOTION IN LIMINE TO INTRODUCE EVIDENCE

15   OF BIAS OF WITNESS ANDRÉA HEATH.

16             MR. SCHWARTZ:  AND WITH REGARDS TO THAT MOTION,

17   YOUR HONOR, I DON'T THINK THE GOVERNMENT IS OPPOSING THAT.  I

18   THINK THE GOVERNMENT'S RESPONSE TO OUR MOTION REALLY WAS A

19   MATTER OF IF THERE IS EVIDENCE THAT WE SEEK TO INTRODUCE THAT

20   IT WAS OBJECTIONABLE, THEY'LL MAKE THE OBJECTIONS.  AND,

21   AGAIN, I'LL RESPECT THAT AND EXPECT THAT.

22             BUT WITHOUT GOING INTO TOO MANY SPECIFICS, SOME OF

23   WHICH I CAN'T BECAUSE SOME OF IT'S BASED ON WHAT WITNESSES

24   TESTIFIED TO, INCLUDING MS. HEATH.  AND MANY OF THE QUESTIONS

25   THAT MAY GO INTO TRYING TO IMPEACH HER WILL BE ASKED OF HER

1    FIRST POSSIBLY.

2              SO, DEPENDING ON WHAT SHE DOES ADMIT TO OR DOES NOT

3    ADMIT TO, AND DEPENDING ON SOME OF THE PRIOR EVIDENCE,

4    MEANING WHAT SHE SAYS ON DIRECT TESTIMONY AND MAYBE A WITNESS

5    -- I'VE GOT NO IDEA OF THE ORDER OF THE WITNESSES THAT THE

6    GOVERNMENT'S GOING TO CALL.  IT'S HARD TO PUT DOWN SPECIFICS

7    OF EXACTLY WHAT THAT EVIDENCE IS.

8              I CAN POINT OUT, AND I APOLOGIZE FOR SOME FORM OF

9    AN OVERLAP, BUT I THINK IT WAS ITEM NUMBER 8 IN THE MOTION TO

10   COMPEL DOES HAVE SOME, I GUESS, CONNECTION TO SOME OF THE

11   IMPEACHMENT MATERIAL WE'RE SEEKING AGAINST MS. HEATH.

12             AND THAT'S ONE OF THE REASONS WE THOUGHT -- WE

13   THOUGHT THAT ITEM PARTICULARLY WAS RELEVANT.  I BELIEVE THAT

14   IS THE INTERNAL AFFAIRS INVESTIGATION OF AN OFFICER-INVOLVED

15   SHOOTING THAT MY CLIENT WAS A PART OF SEVERAL YEARS AFTER THE

16   EVENTS OF THIS CASE WHERE MS. HEATH --

17             THE COURT:  AFTER?

18             MR. SCHWARTZ:  WELL, I THINK IT WAS 2007 OR 2008

19   WAS THE SHOOTING.  BUT MS. HEATH WAS INVOLVED IN THAT IN A

20   WAY THAT WE BELIEVE WE CAN ACTUALLY PROVE A TIME LINE OF HER

21   BIAS.  AND IT'S AT THE SAME TIME THAT THAT SHOOTING OCCURRED

22   AND SHE REFUSED TO BACK HIM UP.  AND HE MADE A COMPLAINT, A

23   PERSONNEL COMPLAINT REGARDING HER NOT BACKING HIM UP.

24             THE COURT:  BUT THIS IS AFTER THE FACT NOT BEFORE.

25             MR. SCHWARTZ:  WELL, YOUR HONOR, BUT IT'S BEFORE

1   HER FIRST INTERVIEW WITH THE FBI IN WHICH HER STORY CHANGED

2   -- FROM THE INTERNAL AFFAIRS TO THE FIRST FBI INTERVIEW.

3          SO, THE DEFENSE THEORY IS THAT THAT PERSONNEL

4   COMPLAINT MY CLIENT MADE WAS THE CATALYST FOR HER TELLING A

5   DIFFERENT STORY TO THE FBI IN HER FIRST INTERVIEW THAN SHE

6   TOLD TO THE INTERNAL AFFAIRS INVESTIGATOR ABOUT THIS CASE A

7   YEAR OR TWO EARLIER.  AND THAT'S PART OF THE -- THAT'S PART

8   OF WHAT WE WERE SEEKING FOR IMPEACHMENT.

9          THE COURT:  WELL, THE GOVERNMENT'S ON NOTICE THAT

10  YOU'RE SEEKING THAT.  AND IF THEY OBJECT, I'LL HANDLE THE

11  OBJECTION AT THE REQUISITE TIME.

12          MR. SCHWARTZ:  THANK YOU, YOUR HONOR.

13          THE COURT:  ALL RIGHT.

14          AND DO WE HAVE ANY OTHER --

15          MS. KAHRAMANIAN:  YOUR HONOR --

16          THE COURT:  YES.

17          MS. KAHRAMANIAN:  IF I MAY ADDRESS THE ISSUE --

18          THE COURT:  YES.  AND, AGAIN, WOULD YOU COME TO THE

19  LECTERN AND REPEAT YOUR REPRESENTATION.

20          MS. KAHRAMANIAN:  YES, YOUR HONOR.

21          LALA KAHRAMANIAN APPEARING ON BEHALF OF THE DESERT

22  HOT SPRINGS POLICE DEPARTMENT, CUSTODIAN OF RECORDS.

23          WITH RESPECT TO THE PARTIES' CONCERNS ON THE

24  SUBPOENA OF REQUEST NUMBER 1 --

25          THE COURT:  YES.

1           MS. KAHRAMANIAN:  -- THE TAPES, COMMANDER BRESSLER,

2    WHO IS HERE WITH ME TODAY, HAS REPRESENTED THAT THOSE TAPES

3    EITHER DO NOT EXIST OR CANNOT BE LOCATED AT THIS TIME.

4           THE COURT:  WELL, WHICH IS IT?

5           MS. KAHRAMANIAN:  HE --

6           THE COURT:  DON'T EXIST OR CAN'T BE LOCATED?

7           MS. KAHRAMANIAN:  WE DON'T KNOW IF THEY DO EXIST

8    BECAUSE THEY CANNOT BE LOCATED.  WE DON'T --

9           THE COURT:  AND HAS THERE BEEN AN EXTENSIVE SEARCH

10   FOR THESE ITEMS?

11          MS. KAHRAMANIAN:  COMMANDER BRESSLER HAS INDICATED

12   THAT HE HAS SEARCHED FOR THE ITEMS, YOUR HONOR.

13          THE COURT:  NO ONE ELSE HAS SEARCHED BUT THE

14   COMMANDER?

15          I MEAN, THIS DEPARTMENT IS HOW LARGE?  HOW MANY --

16   HOW MANY SWORN OFFICERS?

17          (MS. KAHRAMANIAN CONFERRING BRIEFLY.)

18          MS. KAHRAMANIAN:  32, YOUR HONOR.

19          THE COURT:  AND, SO, I WOULD IMAGINE THAT IT

20   WOULDN'T REQUIRE TOO MUCH OF A SEARCH.  SO, I TAKE IT THIS

21   HAS BEEN AN EXHAUSTIVE SEARCH.  AND AFTER THIS EXHAUSTIVE

22   SEARCH BY THE COMMANDER AND WHOEVER ELSE THAT THE

23   REPRESENTATION IS THAT THESE FILES NO LONGER EXIST.

24          IS THAT RIGHT?

25          MS. KAHRAMANIAN:  YES, YOUR HONOR.

1           THE COURT:  ALL RIGHT.

2           MS. KAHRAMANIAN:  THANK YOU.

3           THE COURT:  ALL RIGHT.  THANK YOU FOR THAT.

4           ANYONE WANT JUST TO BE HEARD WITH REGARD TO THAT

5   INFORMATION?  I DON'T THINK IT'S NEW, BUT IF ANYONE WISHES TO

6   BE HEARD.

7           MS. O'CONNOR, ANYTHING ABOUT THAT?

8           MS. O'CONNOR:  NO, YOUR HONOR.  IT'S BEEN THE

9   GOVERNMENT'S UNDERSTANDING FOR SOME TIME THAT THOSE TAPES ARE

10  NOT IN EXISTENCE.

11          THE COURT:  ALL RIGHT.

12          MS. O'CONNOR:  YOUR HONOR?

13          THE COURT:  YES.

14          MS. O'CONNOR:  COULD WE GET SOME -- IN LIGHT OF THE

15  TIGHT TIME FRAME WE HAVE FOR THIS TRIAL TO BE CONDUCTED PRIOR

16  TO THE START OF THE JEWISH HOLIDAYS --

17          THE COURT:  YES.

18          MS. O'CONNOR:  -- AND MR. SCHWARTZ'S NEED TO

19  COMPLETE THE TRIAL BEFORE THEN, COULD WE ASK THE COURT

20  RESPECTFULLY FOR SOME TYPE OF TIME FRAME WITHIN WHICH THE

21  CITY MUST PROVIDE THE DOCUMENTS TO THE COURT FOR THE

22  IN-CAMERA INSPECTION SO THAT WE DON'T END UP PUTTING THE

23  DEFENDANT IN THE POSITION OF NEEDING ANOTHER CONTINUANCE?

24          THE COURT:  HE SHOULDN'T NEED ONE.

25          DO YOU HAVE THOSE ITEMS WITH YOU AT THIS TIME?

1          MS. KAHRAMANIAN:  YES, YOUR HONOR.

2          THE COURT:  ALL RIGHT.  IF YOU'LL TURN THEM OVER TO

3     THE CLERK.

4          MS. KAHRAMANIAN:  I WILL DO THAT.

5          THE COURT:  ALL RIGHT.  THANK YOU.

6          MS. O'CONNOR:  THANK YOU, YOUR HONOR.

7          THE COURT:  ALL RIGHT.

8          ALL RIGHT.  ANYTHING ELSE FROM EITHER THE

9     GOVERNMENT OR FROM THE DEFENDANTS OR FROM THE CUSTODIAN OF

10    RECORDS?  ANYTHING ELSE?

11         ALL RIGHT.  IF NOT, THEN --

12         MR. ARKOW:  YOUR HONOR.

13         THE COURT:  YES, MR. ARKOW?

14         MR. ARKOW:  YES.  STEVEN ARKOW FOR THE UNITED

15    STATES.

16         MIGHT I INQUIRE, IF THE COURT DEEMS ANY OF THE

17    INFORMATION THAT'S TURNED OVER PURSUANT TO DEFENDANT'S RULE

18    17 SUBPOENA FROM THE CITY OF DESERT HOT SPRINGS, THAT THE

19    COURT DOES AFTER THE IN-CAMERA REVIEW TURN IT OVER TO THE

20    DEFENSE.  BECAUSE IT'S A RULE 17 TRIAL SUBPOENA, WILL THE

21    COURT ALSO BE MAKING THOSE MATERIALS AVAILABLE TO THE OTHER

22    PARTY, THAT IS, THE GOVERNMENT IN THIS CASE?

23         THE COURT:  I DON'T SEE WHY NOT --

24         MR. ARKOW:  THANK YOU, YOUR HONOR.

25         THE COURT:  -- THAT COULDN'T BE MADE AVAILABLE.

1              ALL RIGHT.

2              ALL RIGHT.  IF THERE'S NOTHING FURTHER, THEN, WE'LL

3    SEE YOU AT TEN O'CLOCK ON SEPTEMBER 17TH.

4              THE CLERK:  13TH, YOUR HONOR.

5              THE COURT:  13TH.  EXCUSE ME.

6              MS. O'CONNOR:  THANK YOU, YOUR HONOR.

7              THE COURT:  KEEP TRYING TO MOVE IT.  CAN'T MOVE IT.

8              (LAUGHTER.)

9              THE COURT:  ALL RIGHT.  THANK YOU.

10             MR. SCHWARTZ:  THANK YOU.

11             (PROCEEDINGS END, 10:44 A.M.)

12             THE CLERK:  RECALLING ITEM NUMBER 2, CRIMINAL CASE

13   10-163-TJH, UNITED STATES OF AMERICA VERSUS ANTHONY SCLAFANI.

14             COUNSEL, PLEASE STATE YOUR APPEARANCES.

15             MS. O'CONNOR:  GOOD MORNING, YOUR HONOR.

16             AGAIN, CHERYL O'CONNOR AND STEVEN ARKOW FOR THE

17   UNITED STATES.

18             THE COURT:  THANK YOU.

19             MR. SCHWARTZ:  GOOD MORNING AGAIN, YOUR HONOR.

20             MICHAEL SCHWARTZ AND MICHAEL SIMIDJIAN ON BEHALF OF

21   MR. SCLAFANIA, WHO IS PRESENT NEXT TO ME.

22             THE COURT:  YES.

23             I UNDERSTAND THAT YOU'RE IN AGREEMENT ON THE DATE

24   FOR CONTINUANCE OF THE TRIAL IS NOVEMBER 8TH?

25             MS. O'CONNOR:  YES, THAT'S CORRECT, YOUR HONOR.

 1          I BELIEVE THAT BOTH SIDES ARE CONCERNED ABOUT THE

 2   VOLUME OF DOCUMENTS THAT HAVE BEEN PRODUCED AND WOULD LIKE AN

 3   OPPORTUNITY TO BE ABLE TO REVIEW THOSE PRIOR TO THE TRIAL.

 4          THE COURT:  OF COURSE.  OF COURSE.

 5          AND I TAKE IT YOU'VE GONE OVER THIS WITH YOUR

 6   CLIENT, HAVE YOU, MR. SCHWARTZ?

 7          MR. SCHWARTZ:  YES, YOUR HONOR, I HAVE.  HE'S

 8   AGREEABLE.

 9          THE COURT:  ALL RIGHT.  THEN, IF YOU'RE IN

10   AGREEMENT, WE'LL SET IT.

11          AND I HAVE TO SAY THAT IT'S A TENTATIVE DATE NOW

12   BECAUSE MY REGULAR CLERK IS NOT HERE AND WE'RE NOT ABLE TO

13   GET INTO HER SYSTEM RIGHT NOW.  BUT I THINK IT MAY BE ALL

14   RIGHT.  IF THERE'S SOMETHING ELSE THAT DATE, I'LL TRY TO

15   CHANGE THE OTHER MATTER.  AND WE'LL SEE IF WE CAN PROCEED ON

16   NOVEMBER 8TH.

17          MS. O'CONNOR.

18          MS. O'CONNOR:  YOUR HONOR, WOULD YOU LIKE THE

19   GOVERNMENT TO PREPARE A STIPULATION AND PROPOSED ORDER?

20          THE COURT:  YES, WOULD YOU, PLEASE.

21          MS. O'CONNOR:  WE WOULD DO SO, YOUR HONOR.

22          THE COURT:  ALL RIGHT.  THANK YOU.

23          ALL RIGHT.  NOVEMBER 8TH AT 10:00 A.M. THEN.

24          THE DEFENDANT'S ORDERED BACK HERE AT THAT TIME FOR

25   TRIAL.

1             MS. O'CONNOR:  SINCE WE ALL ARE HERE, WOULD THE

2    COURT LIKE TO TAKE AN ORAL WAIVER FROM MR. SCLAFANI OR SHOULD

3    WE JUST INCLUDE THAT IN THE STIPULATION?

4             THE COURT:  I THINK YOU CAN INCLUDE IT.  WE HAVE

5    HIS ATTORNEY AS AN OFFICER OF THE COURT INDICATING THAT HE'S

6    SPOKEN TO HIM AND THAT HE'S IN AGREEMENT.

7             MS. O'CONNOR:  THANK YOU, YOUR HONOR.

8             THE COURT:  THANK YOU.

9             ALL RIGHT.  THANK YOU.  NOVEMBER 8TH.

10            MR. SCHWARTZ:  THANK YOU, YOUR HONOR.

11            THE CLERK:  THIS COURT IS ADJOURNED.

12            (PROCEEDINGS CONCLUDED 11:36 A.M.)

13

14

15

16

17

18

19

20

21

22

23

24

25

32

1                       C E R T I F I C A T E

2

3          I CERTIFY THAT THE FOREGOING IS A CORRECT

4    TRANSCRIPT FROM THE ELECTRONIC SOUND RECORDING OF THE

5    PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

6

7

8    /S/ DOROTHY BABYKIN                     10/17/11

9    _____        _____

10   FEDERALLY CERTIFIED TRANSCRIBER         DATED

11   DOROTHY BABYKIN

12

13

14

15

16

17

18

19

20

21

22

23

24

25