ANDRÉ BIROTTE JR.
United States Attorney
ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division
STEVEN M. ARKOW (California Bar No. 143755)
MARGARET L. CARTER (California Bar No. 220637)
      1300 United States Courthouse
      312 North Spring Street
      Los Angeles, California 90012
      Telephone: (213) 894-6975/0759
      Facsimile: (213) 894-6269/6436
      E-mail:    steven.arkow@usdoj.gov
                 margaret.carter@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR No. 10-163-TJH |
| Plaintiff, | GOVERNMENT'S OBJECTION TO PRESENTENCE REPORT |
| v. | |
| ANTHONY SCLAFANI, | **Sentencing: July 30, 2012** |
| Defendant. | |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California, hereby submits its objection to the Pre-Sentence Report for defendant Anthony Sclafani.  The sentencing guidelines calculation should include a restraint-of-victim adjustment or, alternatively, a vulnerable victim adjustment.

1    This objection is based on the attached memorandum of points

2 and authorities, testimony and evidence presented at trial, and

3 the files and records in this matter.

4 DATED: April 20, 2012            Respectfully submitted,

5                                  ANDRÉ BIROTTE JR.
                                   United States Attorney
6
                                   ROBERT E. DUGDALE
7                                  Assistant United States Attorney
                                   Chief, Criminal Division
8

9                                  *Steven M. Arkow*

10                                 STEVEN M. ARKOW
                                   MARGARET L. CARTER
                                   Assistant United States Attorney
11
                                   Attorneys for Plaintiff
12                                 UNITED STATES OF AMERICA

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . i

MEMORANDUM OF POINTS AND AUTHORITIES . . . . . . . . . . . . 3

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . 3

II.   RELEVANT FACTS . . . . . . . . . . . . . . . . . 4

      A. Count One - Victim Jamal White . . . . . . . . 4

      B. Count Two - Victim Angelica Vargas . . . . . . . . . 5

III.  ANALYSIS . . . . . . . . . . . . . . . . . . . 7

      A.   The Victims were Physically Restrained when
           Defendant Pepper Sprayed and Tased the Victims,
           and Therefore, the Restraint-of-Victim Adjustment
           Pursuant to U.S.S.G. § 3A1.3 Applies . . . . . . . . 7

      B.   Defendant Committed Crimes Against Victims Who
           Could not Protect Themselves, and Therefore, the
           Vulnerable Victim Adjustment Pursuant to § 3A1.1
           Applies . . . . . . . . . . . . . . . . . 10

IV.   CONCLUSION . . . . . . . . . . . . . . . . . . 13

i

1

2

TABLE OF AUTHORITIES

3

FEDERAL CASES:                                                    PAGE(S)

4
United States v. Betone,
        636 F.3d 384 (8th Cir. 2011) .......................... 12

5
United States v. Brown,
6       276 F.3d 211 (6th Cir. 2002) .......................... 11

7
United States v. Brugman,
        364 F.3d 613 (5th Cir. 2004) .......................... 11

8
United States v. Carson,
9       560 F.3d 566 (6th Cir. 2009) ........................... 9

10
United States v. Clayton,
        172 F.3d 347 (5th Cir. 1999) ........................ 8, 9

11
United States v. Crudden,
12      76 F.3d 389 (9th Cir. 1996) ........................... 12

13
United States v. Epley,
        52 F.3d 571 (6th Cir. 1995) ............................ 8

14
United States v. Evans,
15      85 F.3d 617 (4th Cir. 1996) ............................ 9

16
United States v. Gonzalez,
        183 F.3d 1315 (11th Cir. 1999) ....................... 11

17
United States v. Gonzalez,
18      436 F.3d 560 (5th Cir. 2006) .......................... 10

19
United States v. Hershkowitz,
        968 F.2d 1503 (2d Cir. 1992) .......................... 11

20
United States v. Lambright,
21      320 F.3d 517 (5th Cir. 2003) .......................... 11

22
United States v. Stokley,
        881 F.2d 114 (4th Cir. 1989) ........................... 7

23
United States v. Thompson,
24      109 F.3d 639 (9th Cir. 1997) ....................... 7, 10

STATUTES:

25
18 U.S.C. § 242.. ........................... 3, 8, 10, 12

26
18 U.S.C. § 3553 ...................................... 11

27

28

ii

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### INTRODUCTION

On February 17, 2012, a jury convicted defendant Anthony Sclafani ("defendant") of two counts of depriving an individual of rights under the color of law, in violation of 18 U.S.C. § 242.  Defendant, a police sergeant and watch commander at the Desert Hot Springs Police Department ("DHSPD"), used excessive force when he pepper sprayed and shocked with a Taser gun two arrestees in two separate incidents, a day apart, without any lawful justification.

At trial, the evidence on count one proved that defendant pepper sprayed and tased the victim (Jamal White) while the victim was handcuffed and in police custody at DHSPD jail out of anger, because the victim had been mouthing off at defendant, and for no legitimate law enforcement purpose.  As to count two, on the very next day, defendant illegally used his Taser gun and pepper spray on the victim (Angelica Vargas) who was also in police custody at the DHSPD jail and was too drunk to run or walk on her own.

On March 23, 2012, the Probation Office disclosed the Pre-Sentence Report ("PSR") for defendant which calculates his guidelines sentencing range at 87-108 months, based on total offense level 29 and criminal history category I.  (Document No. 149; PSR ¶ 74).  The PSR does not include in defendant's offense level a two-level increase that applies when the victim is restrained.  The PSR also does not include in defendant's offense level a two-level increase that applies when defendant knows or

3

1   should know that his victim is vulnerable.  The government
2   objects to the PSR calculation because it fails to account for
3   the fact that both victims were physically restrained and
4   vulnerable when defendant used excessive force.  This Court
5   should apply at least one of these adjustments.  With a two-level
6   increase, defendant's total offense level would increase from 29
7   to 31, resulting in a guidelines sentencing range of 108-135
8   months.[1]

## II.

### RELEVANT FACTS

11      Based on the evidence presented at trial and as set forth
12  in the PSR, the facts relating to the relevant victim adjustments
13  are as follows:

### A. Count One - Victim Jamal White

15      On February 24, 2005, the victim was in police custody,
16  having been arrested at his apartment for a parole violation.
17  (PSR ¶ 8.)  Defendant, without any back-up or officer assistance,
18  transported the victim, handcuffed behind his back, to the police
19  station.  (PSR ¶ 10.)  Defendant admitted in his police report to
20  pepper spraying the victim while he was handcuffed in the back of
21  his police car and to tasing him while he was handcuffed at the
22  DHSPD police station.  The victim was "mouthing off" to defendant
23  while defendant drove him the short drive to the police station.
24  After arriving at the station, defendant, without any officer

---

26      [1] This memorandum is limited to presenting the government's
    objection to the PSR on the victim restraint, or alternatively,
27  the vulnerable victim adjustment.  The government's sentencing
    position, discussing the statutory sentencing factors and its
28  position on an appropriate sentence, will be filed separately.

1  assistance, escorted the victim from his patrol car and placed
2  the victim, who remained handcuffed the entire time, on a bench
3  in the booking area.  (PSR ¶ 12).  The victim continued to insult
4  defendant and complained about defendant's prior use of force,
5  calling defendant a coward for pepper spraying him.  <u>Id.</u>
6  Defendant then fired his Taser gun against the victim's chest in
7  the drive-stun mode, causing him pain and to fall to the ground
8  off the bench.  <u>Id.</u>  The victim did not pose any threat and
9  defendant tased him merely out of anger because he insulted
10  defendant.  The victim was writhing on the ground and moaning in
11  pain.  Defendant then ordered the victim to stand up or defendant
12  would tase him again.  <u>Id.</u>  When the victim could not stand up,
13  as he was handcuffed behind his back on the jail floor, defendant
14  again fired his Taser again, this time in dart mode, striking the
15  victim, causing his muscles to convulse, and resulting in
16  incapacitation.  <u>Id.</u>  Other officers later transported the victim
17  to a hospital to remove the Taser darts and to treat his wounds.
18  (PSR ¶ 18.)
19  **B. Count Two - Victim Angelica Vargas**
20      On February 25, 2005, defendant used excessive force against
21  another victim arrestee.  Defendant admitted in his police report
22  that he pepper sprayed and tased the victim while she was in
23  custody at the DHSPD jail, after the victim had been arrested for
24  driving under the influence and rear-ending an off-duty school
25  bus.  (PSR ¶ 13.)  The DHSPD arresting officer at the scene of
26  the accident (Matthew Gutting) found the victim passed out in the
27  driver's seat and saw beer in the car.  (PSR ¶ 14.)  The victim
28  was too intoxicated to take a field sobriety test.  <u>Id.</u>  The

1  officer drove her to the DHSPD police station, but she was too
2  intoxicated to complete the booking process, so the officers put
3  her in a cell.  Id.

4      While the victim was in the cell, defendant opened the door
5  and pepper sprayed her in the eyes.  (PSR ¶ 15.)  Because of the
6  strong odor of the pepper spray, he opened all the doors to the
7  jail area for ventilation.  Id.

8      Then-DHSPD Officer Gutting testified that after her cell
9  door was opened, he fired his Taser and struck the victim's back
10 shoulder with one of the taser darts.  Gutting testified that he
11 used force because she was "jogging" out of her cell to escape
12 from the jail.  However, by convicting on this count, the jury
13 demonstrated that it did not credit Gutting's purported
14 justification for using force.  Gutting further testified that
15 after his dart struck the victim she was on the ground and he
16 admitted that there was no reason to tase her.  The government
17 also solicited testimony from the defense blood alcohol expert
18 (Norm Fort) on cross-examination that since the victim had been
19 too intoxicated to walk or stand on her own a few hours earlier,
20 her mobility would have been "basically the same" a few hours
21 later when she was tased by Gutting and afterwards by defendant
22 -- for three complete cycles lasting approximately forty seconds.
23 (PSR ¶ 16).  One of the shots struck the victim in the left
24 breast.  Id.  As a result, the victim suffered bruises and a torn
25 ligament in her ankle, which has yet to heal.  (PSR ¶ 19.)
26 //
27 //
28 //

6

1                                     III.

2                              ANALYSIS

3 A.     The Victims were Physically Restrained when Defendant Pepper

4          Sprayed and Tased the Victims, and Therefore, the Restraint-

5          of-Victim Adjustment Pursuant to U.S.S.G. § 3A1.3 Applies

6        The United States Sentencing Guidelines ("U.S.S.G.") provide

7 a two-level increase in defendant's offense level if the "victim

8 was physically restrained in the course of the offense."

9 U.S.S.G. § 3A1.3.   The Guidelines define "physically restrained"

10 as the "forcible restraint of the victim such as being tied,

11 bound, or locked up."   U.S.S.G. § 1B1.1, comment. (n.1(K)).

12 These examples are "merely illustrative and other conduct may

13 constitute physical restraint."   United States v. Thompson, 109

14 F.3d 639, 641 (9th Cir. 1997); United States v. Stokley, 881 F.2d

15 114, 116 (4th Cir. 1989) ("[b]y the use of the words 'such as,'

16 it is apparent that 'being tied, bound, or locked up' are listed

17 by way of example rather than limitation.")

18        The victim in count one (Jamal White) was handcuffed behind

19 his back.   Handcuffs plainly fall within the definition of

20 "physically restrained" because the victim was both "tied" and

21 "bound."   The handcuffs prevented him from protecting his face

22 and eyes when defendant pepper sprayed him and prevented him from

23 shielding his body when defendant tased him.

24        The fact that the victim was lawfully handcuffed

25 (restrained) does not preclude application of the adjustment.

26 Neither the plain reading of the guidelines nor the defintion of

27 "physically restrained" provides for any exception for a police

28

1  officer acting under color of law where a vicitm may otherwise be

2  lawfully restrainted in the course of defendant's duties.

3       In support of this position is United States v. Clayton, 172

4  F.3d 347 (5th Cir. 1999).  In Clayton, a law enforcement officer

5  was convicted of the same statute at issue here, 18 U.S.C. § 242,

6  by violating the civil rights of an individual who was lawfully

7  arrested and in custody by kicking her in the "head as she lay

8  face-down and handcuffed."  Clayton, 172 F.3d at 349.  The

9  court's analysis followed a plain-reading logic that provided

10 that neither the "letter of the guideline" nor the application

11 notes' exceptions, which the Court found to be inapplicable,[2]

12 barred the application of the restraint enhancement.  Clayton,

13 172 F.3d at 353.  The court stated:

14          [A]n underlying consideration in applying the guideline

15      is that the physical restraint of a victim during an assault

16      is an aggravating factor that intensifies the wilfulness,

17      the inexcusableness and reprehensibleness of the crime and

18      hence increases the culpability of the defendant.  It is

19      true, as the district court concluded, that Freeman was not

20

21          [2]     The Guidelines include two exceptions to the

22  "restraint-of-victim" adjustment, neither of which is applicable
    in this case.  The Guidelines provide that courts should not

23  apply the adjustment "where the offense guideline specifically
    incorporates this factor, or where the unlawful restraint of a

24  victim is an element of the offense itself."  U.S.S.G. § 3A1.3
    n.2.  The exceptions do not apply because the offense guideline

25  for assault does not incorporate "unlawful restraint of a victim"
    as a factor.  Additionally, the underlying statute, 18 U.S.C.

26  § 242, does not include "unlawful restraint of a victim" as an
    element of the crime.  United States v. Epley, 52 F.3d 571, 583

27  (6th Cir. 1995) ("[T]he civil rights crime charged here under
    §§ 241 and 242 does not contain physical restraint as an element

28  of the offense.").

1    handcuffed to facilitate the commission of the offense. . .
2    Nevertheless, Clayton took advantage of the restraint
3    Freeman was under as she lay on the ground, handcuffed. . .
4    She could not defend herself . . .  Because Clayton took
5    advantage of this restraint and the particular vulnerability
6    of the victim, it seems to us that both the letter and
7    spirit of the guideline applies to impose an additional
8    sentence on Clayton, beyond the one mandated for his use of
9    unreasonable force . . . the lawfulness of the defendant's
10   restraint of the victim at the time the unreasonable or
11   excessive force occurs is not a concern implicated by
12   U.S.S.G. § 3A1.3."

13   Id.

14         See United States v. Carson, 560 F.3d 566 (6th Cir. 2009)
15   (restraint-of-victim increase applied where officers beat a
16   driver who they lawfully arrested but did not handcuff, noting
17   that "Clayton sets out the appropriate interpretation of
18   §3A1.3."); United States v. Evans, 85 F.3d 617 (4th Cir.
19   1996)(unpublished disposition) (restraint-of-victim increase
20   applied where officers lawfully arrested the victim).
21         Similarly, the victim adjustment applies to the victim in
22   count two (Angelica Vargas).  The victim was "locked up" in the
23   holding cell area when defendant pepper sprayed her.  Section
24   1B1.1 of the sentencing guidelines states that an example of
25   "physically restrained" is "locked up."  Defendant opened the
26   door, pepper sprayed her, and then closed the door.  The odor of
27   the pepper spray was so intolerable that defendant opened the
28   doors to dissipate the smell.  Following this, the victim was

9

tased, first by Officer Gutting, and then by defendant.  Even if
she was outside of the holding cell when she was tased, the
victim was still physically restrained within the DHSPD jail.
Physical restraint does not require any physical contact.
<u>Thompson</u>, 109 F.3d at 641.  Rather, physical restraint is
measured by a show of force.  <u>Id.</u>  Here, the victim "was
physically restrained" because she was in a jail facility
surrounded by officers.  The DHSPD jail facility was a secured
and gated area from which no inmate had escaped.  In addition,
defendant tased the victim for three cycles.  The victim, even
according to Officer Gutting, was on the ground, incapacitated
(restrained) after Gutting tased her, when defendant tased her
three consecutive times.

Accordingly, the victim restraint adjustment pursuant to
§ 3A.1.3 applies in counts one and two.

**B.   Defendant Committed Crimes Against Victims Who Could not
Protect Themselves, and Therefore, the Vulnerable Victim
Adjustment Pursuant to § 3A1.1 Applies**

In the event that the Court declines to apply the victim
restraint adjustment, the government, in the alternative,
requests that the Court apply the vulnerable victim adjustment.[3]

_____

[3] The government does not seek to apply both victim
adjustments.  However, applying both enhancements is arguably
warranted and would not constitute double-counting.  Both victims
were not only restrained, but they were vulnerable for the
reasons stated above, in section C.  Several courts have applied
the victim restraint and vulnerable victim enhancements
simultaneously.  <u>United States v. Gonzalez</u>, 436 F.3d 560, 585-86
(5th Cir. 2006) (where police officer was defendant in § 242
case, both restraint-of-victim and vulnerability adjustments were
applicable because arrestee was both unusually vulnerable
(partially paralyzed) and physically restrained (handcuffed) so

1  The Guidelines state that a court should apply a two-level

2  increase "[i]f the defendant knew or should have known that the

3  victim of the offense was a vulnerable victim." U.S.S.G.

4  § 3A1.1(b)(1). "Vulnerable victim" is defined as "a person (A)

5  who is a victim of the offense of conviction and any conduct for

6  which the defendant is accountable under § 1B1.3(Relevant

7  Conduct); and (B) who is unusually vulnerable due to age,

8  physical or mental condition, or who is otherwise particularly

9  susceptible to the criminal conduct." U.S.S.G. § 3A1.1 comment.

10 (n.2).

11      A victim's status as a detainee in a jail facility warrants

12 application of the vulnerable victim adjustment. United States

13 v. Lambright, 320 F.3d 517, 518 (5th Cir. 2003)(applying

14 vulnerable victim enhancement to prison guard who assaulted an

15 inmate where the inmate was dependent on the care of the prison

16 officers, could not protect himself from the assault, and could

17 not flee from harm); United States v. Hershkowitz, 968 F.2d 1503,

18 1505 (2d Cir. 1992) (applying vulnerable victim adjustment to

19 detention officer who assaulted detainee because victim was in

20 custody of and surrounded by four guards when the assault

21 occurred); United States v. Brugman, 364 F.3d 613, 622 (5th Cir.

22

23 ─────────────────

24 that "his ability to wipe the pepper spray from his eyes was
   limited even further by handcuffs."); United States v. Brown, 276

25 F.3d 211, 219 (6th Cir. 2002) ("binding [victims] with duct tape
   invokes both of these enhancements"); and United States v.

26 Gonzalez, 183 F.3d 1315, 1326-27 (11th Cir. 1999), overruled on
   other grounds. Notwithstanding that the government is not

27 seeking both victim adjustments, the government's position is
   that each is an aggravating factor that should be considered by

28 the Court in evaluating defendant's overall sentence under the
   statutory factors under 18 U.S.C. § 3553.

11

1   2004) (applying vulnerable victim adjustment to Border Patrol
2   agent convicted of § 242 where victim was immobile, sitting on
3   the ground, and under the supervision of another Border Patrol
4   agent where agent "took advantage of [victim's] susceptibility").

5        Above and beyond their custodial status as detainees, which
6   alone is sufficient to qualify for the vulnerable victim
7   adjustment, each victim was rendered more vulnerable by
8   defendant, having first been pepper sprayed by defendant, causing
9   irritation to their eyes and impeding their breathing, before
10  defendant tased them.

11       In addition, as noted above, the physical condition of the
12  victim is among the characteristics mentioned in the guidelines
13  which may support a vulnerable victim adjustment.  This is
14  particularly significant as to count two (Vargas), where the
15  victim's physical condition was that she was too intoxicated to
16  walk or stand by herself when she was transported to the DHSPD
17  jail, and thus was vulnerable, warranting the adjustment.[4]
18  Defendant tased the victim three times, for a total of forty
19  seconds, despite knowing that the victim was suffering the
20  effects of the pepper spray and despite knowing that she was
21  still intoxicated.

22

23

24  _____

25       [4] The vulnerable victim enhancement applies to intoxicated
    victims.  United States v. Betone, 636 F.3d 384, 388 (8th Cir.
26  2011) (applying vulnerable victim enhancement to intoxicated
    victim in physical abuse prosecution); United States v. Crudden,
27  76 F.3d 389 (9th Cir. 1996)(unpublished disposition)(holding that
    vulnerable victim enhancement applied where defendant knew that
28  victim was intoxicated).

1    Accordingly, if the Court does not apply the restraint-of-
2 victim adjustment, the government requests the Court apply the
3 vulnerable victim adjustment to counts one and two.

### IV.

### CONCLUSION

6    For the reasons stated above, this Court should apply the
7 two-level victim restraint adjustment to the offense level,
8 resulting in an offense level of 41.  If this Court does not
9 apply the victim restraint adjustment, the government, in the
10 alternative, requests that this Court apply the two-level
11 vulnerable victim adjustment to the offense level, also resulting
12 in an offense level of 41.

13